Syllabus.

# Wytheville.

## OLD DOMINION COAL CORPORATION v. R. C. SNIPES.

### June 11, 1925.

Argued before Judge Chichester took his seat.

1. APPEAL AND ERROR—*Conflicting Evidence—Sale of Coal.*—Where plaintiff in error claimed that defendant in error had sold it fifty tons of coal, and there was a clear issue of fact between the parties supported by evidence for each as to whether there had been such a sale, and an absolute denial by defendant in error that there had ever been any such sale, or unconditional offer to sell, a verdict of the jury in favor of defendant in error concludes this issue of fact in his favor, and is conclusive on appeal, unless there was error in the instructions.

2. SALES—*Offer an Acceptance—Withdrawal of Offer—Case at Bar.*—In the instant case, the question at issue was whether plaintiff in error had purchased of defendant in error fifty tons of coal. There was evidence for the plaintiff in error tending to show an offer by defendant in error to sell the coal, and an acceptance by plaintiff in error on April 11th. If this was true, the offer being without consideration could have been withdrawn by defendant in error before it was accepted.

    *Held:* That an instruction for plaintiff in error to the effect that if it accepted by telegram, the offer of defendant in error on April 11th, then the sale was completed, was properly amended by the court adding a proviso that this telegram must have been sent before defendant in error's telegram of April 11th, withdrawing the offer, was received.

3. APPEAL AND ERROR—*Error in Instructions—Nice Legal Distinction.*—It is almost impossible under the stress and strain of a jury trial always to observe nice legal distinctions, so that it is not difficult thereafter to point out mistakes in instructions. Appellate courts, however, should disregard such errors unless some substantial right has been denied to those objecting thereto.

4. CONTRACTS—*Understanding of Parties—Conclusion of Contract.*—In order to determine whether a contract has been concluded, we must depend, not upon the undisclosed understanding of the parties, but either upon the language used or upon their words and conduct, which dis-

close a contract. The undisclosed understanding of the parties when the terms of a contract are unequivoca is always immaterial. Where, however, the terms of the contract are obscure, the version of the parties shown by the construction which they place upon it may be considered. In its essence, however, a contract depends upon its terms and not upon the understanding of the parties.

5. Contracts—*Appeal and Error—Harmless Error—Contract Dependent Upon what the Parties Understood.*—Upon the question of whether a contract of sale had been entered into between the parties, an instruction by the court appeared to make the contract dependent upon what the parties understood. While this instruction was fairly open to criticism, the giving of it under the facts of this case did not constitute reversible error, because the evidence did not preponderate in favor of the plaintiff in error and the jury must have understood the simple and true issues between the parties, which was sufficiently presented in this and other instructions.

6. Contracts—*Sales—Meeting of Minds.*—The minds of parties to a contract must meet. In sales, they must agree as to the subject matter, price, time and place of delivery; but in order to determine whether there has been this accord, this offer and acceptance, we must first consider the language used and determine its meaning from that language.

Error to a judgment of the Circuit Court of the city of Richmond in a proceeding by attachment. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Scott & Buchanan,* for the plaintiff in error.

*Andrew D. Christian* and *Sells, Simmonds & Bowman,* for the defendant in error.

Prentis, P., delivered the opinion of the court.

The Old Dominion Coal Corporation bought fifty cars of Elkhorn run of mine coal from Snipes, order No. 10,221, which coal was delivered. It was not paid for,

and this proceeding by attachment for the purchase price resulted.

At the trial the liability of the vendee for the price of this coal was admitted, but in its answer to the attachment and by special plea of set-off, the coal company, vendee, asserted a counterclaim against Snipes for $2,926.61, claimed as damages because of the failure of Snipes to deliver fifty more cars of similar coal pursuant to order No. 10,222, which it was claimed had been also bought on the same day. It is upon this counterclaim that the parties went to trial. The jury found in favor of Snipes in a verdict which upon this issue reads thus: "Upon the issue joined on the counter claim of the defendant, the *Old Dominion Coal Corporation* against *R. C. Snipes*, we find for said Snipes."

Old Dominion Coal Corporation was the original defendant, but having unequivocally admitted its liability for the first fifty cars of coal, it then became plaintiff as to this counterclaim.

[1] 1. The first assignment of error is that the verdict in favor of Snipes is contrary to the law and the evidence, without supporting evidence, and so plainly wrong that judgment should be entered here in favor of the Old Dominion Corporation on its counterclaim.

We find ourselves unable either to appreciate or to understand the insistence of the learned counsel upon this point, because, as we read the record, there was a clear issue of fact between the parties as to the second fifty cars of coal, and an absolute denial by Snipes that there had ever been any such sale, or unconditional offer to sell it. For the coal company there are two contentions, as we understand the briefs and the record, both based on a telephone conversation—one that there was an absolute sale on April 10th, the other

that there was an offer by Snipes to sell, conditioned upon the coal company's giving shipping instructions on the next day, and that having given such instructions this closed the offer and constituted a contract; whereas, on the other hand, the evidence of Snipes tends to show that neither sale, offer nor option were ever given; that what he said was that he would go into the coal fields (Elkhorn City) and there ascertain whether he could buy a second lot of fifty cars of coal for the vendee, and that he would wire the result of that effort on April 11th; that he did go there, found that prices had advanced so that he could not buy coal at the former price, and that he then wired the vendee on April 11th that he could not furnish the coal for the price offered. It is obvious that this presented a clear issue of fact to be determined by the jury, and that upon this issue the burden of proof rested on the coal company as plaintiff. That this was understood is evident from instruction No. 1, given by the court upon the motion of the coal company, reading: "The court instructs the jury that what they have to determine upon the issue joined in this proceeding is whether or not the Old Dominion Coal Corporation is entitled to recover of R. C Snipes the amount of its counterclaim, to-wit, the sum of $2,926.61, with interest thereon, as set out in the statement introduced in evidence, or any part thereof."

So that, notwithstanding the elaborate discussion of the law and the evidence in the briefs, we deem it only necessary to say that the verdict is fully supported by the evidence for Snipes, and that the conflict therein has been determined against the coal company. It is conclusive here unless there was some error in the instructions.

[2] 2. The coal company offered instruction No. 1,

which was amended and granted as instruction No. 2. As granted, with the amendment in italics, it reads:

"The court instructs the jury that if they believe from the evidence that as a result of previous negotiations between R. C. Snipes and A. H. Christian, a representative of the Old Dominion Coal Corporation, that the said Snipes, on April 10, 1922, gave to the Old Dominion Coal Corporation an option to buy of and from the said Snipes fifty cars of Elkhorn run of mine coal other than that embraced in order No. 10,221, at the price of $1.35 per ton, the said option to be exercised by the Old Dominion Coal Corporation by giving notice to said Snipes and furnishing him with shipping directions for the said coal; and if they further believe from the evidence that the Old Dominion Coal Corporation sent to the said Snipes the telegram of April 10, 1922, introduced in evidence, and followed the same by the telegram to said Snipes of April 11, 1922, introduced in evidence, *and that both of said telegrams were sent before Snipes' telegram of April 11th was received by said O. D. Coal Corporation,* and thereafter mailed to said Snipes a formal order covering said coal, the same being known as order No. 10,222, then said Snipes became bound to provide and furnish for and on account of the Old Dominion Coal Corporation the fifty cars of coal called for in said telegrams and said order, and to ship the same according to the directions so given; and if the jury further believe from the evidence that the said Snipes failed to so ship said coal, then the Old Dominion Coal Corporation is entitled to recover, on the issue joined herein, of the said R. C. Snipes the damages suffered by it on account of such failure."

It is claimed that the court erred in introducing the amendment. It is based upon the evidence relied on.

by the coal company that there was an offer by Snipes (referred to by all the parties as an option) to sell an additional fifty carloads of coal, if accepted by the company on April 11th. If this was true, then the offer being without consideration could have been withdrawn by Snipes before it was accepted. This is the rule which was in mind when the amendment was made.

Under the evidence in this case, it was clearly proper, because the coal company, in its correspondence, and by its agent and chief witness, repeatedly refers to this transaction as an option, and Christian, the witness, clearly gives this as his version of the contract in these questions and answers on cross-examination:

"Q. An inconsistency has developed between your testimony when Mr. Scott examined you, and your testimony now. When Mr. Scott examined you, you followed very largely in your answers the statement in your plea to the effect that this thing was actually closed up over the phone and made a binding contract over the phone?

"A. Yes. I told Mr. Snipes I would furnish him the billing tomorrow. If we had not furnished him the billing, the deal presumably would have been off.

"Q. If you had not furnished him the billing he could not have made you take it, could he?

"A. No; I don't think so.

"Q. That is what I mean. I just want to show that neither party was bound by it unless you sent him shipping instructions on Tuesday?

"A. Yes.

"Q. And if you did send him billing instructions, both parties were bound?

"A. Yes. We sent him billing instructions the next day.

"Q. When you sent him the telegram on the 10th, were you simply reminding him that you had an option?

"A. No. The telegram was: 'Ship fifty cars of Lorraine, will furnish billing instructions tomorrow.'

"Q. That was notice that you had an option?

"A. If we didn't furnish the billing I suppose the deal would have been off, but we did furnish the billing the next day as agreed."

It must be remembered that the coal company ·claims that the alleged sale, or offer, was made in a telephone conversation between Christian, represent-ing the company, and Snipes, about which they differ radically. So that this evidence of Christian, the agent and witness for the coal company, becomes most material in determining precisely what the contract was. This evidence shows conclusively that he did not consider his principal, the coal company, bound unless and until such instructions were sent. These were not sent until the 11th. On the 11th, Snipes, in accordance with his different and contrary recollection of the conversation, wired to the coal company that he could not sell the second fifty carload lot at the price offered. It was on the same day, the 11th, on which the agent of the coal company wired to Snipes that he would take that coal, thus, according to his under-standing, exercising his company's privilege and so ·converting the offer into a contract. So that, con-ceding this theory of the company to be correct, it was necessary to show that the offer had been accepted before it had been withdrawn by Snipes. The evidence is in confusion here. Christian, for the company, testified that his acceptance was sent before Snipes' telegram was received. The notations upon the tele-grams, which were accepted without protest, indicate, however, that the telegram of acceptance or confirma-

tion was not sent to Snipes from Cincinnati until 3:41 P. M. and not received at Elkhorn City until 4:26 P. M. on the same day; whereas the telegram from Snipes to the company was received at Cincinnati at 2:23 P. M., more than an hour before the acceptance was wired. to Snipes.

This evidence presented a conflict to which the amendment of the instruction was directed. It was clearly a proper amendment, and to have given the instruction in the form in which it was offered would have been to ignore a material and, if true, decisive part of the evidence in the case. All of the language used in the instruction, except the underscored amendment, was the language of the learned attorneys for the coal company, so that they cannot be heard here to make any hypercritical objections to its form. It is substantially correct under the facts of this case.

3. Instructions Nos. 4 and 5 refer to the same controverted questions of fact, and are correct for the same reasons which justify the amendment of instruction No. 2—that is, that if it was a bare offer to sell, without a supporting consideration, it might be withdrawn before acceptance.

4. The giving of instruction No. 7 is assigned as error. It reads:

"The court instructs the jury that in order to make a contract, the minds of the parties must meet—there must be a coming together in complete accord of the minds of both parties as to subject matter, price, time and place of delivery. The court further instructs the jury that if you believe from the evidence that if the plaintiff, Snipes, understood that he was, when talking with defendant's manager, Christian, on the telephone on April 10th, only offering to go into the coal field and try to get fifty cars of coal for Old Dominion Coal.

Company and wire defendant coal corporation on the 11th, then there would be no contract, notwithstanding defendant's manager, Christian, may have understood Snipes was giving an option. If you find further that such is the case, the plaintiff merely understood one thing and defendant another and the minds of the parties did not meet and your verdict would be for plaintiff Snipes."

[3-6] It is almost impossible under the stress and strain of a jury trial always to observe nice legal distinctions, so that it is not difficult thereafter to point out mistakes in instructions   Appellate courts, however, should disregard such errors unless some substantial right has been denied to those objecting thereto.   The chief objection to this instruction is that the court appears to make the contract depend upon what the parties understood, whereas, in order to determine whether a contract has been concluded, we must depend, not upon the undisclosed understanding of the parties, but either upon the language used or upon their words and conduct, which disclose a contract.   The undisclosed understanding of the parties when the terms of a contract are unequivocal is always immaterial.   Where, however, the terms of the concontract are obscure, the version of the parties shown by the construction which they place upon it may be considered.   In its essence, however, a contract depends upon its terms and not upon the understanding of the parties.   Its obligations must be resolved by what they express, that is, upon their words, conduct, or both.   So that this instruction should have been more carefully drawn.   It does state a sound proposition of law, in this aspect, namely, that the minds of parties to a contract must meet.   In sales, they must agree as to the subject matter, price, time and place

of delivery; but in order to determine whether there has been this accord, this offer and acceptance, we must first consider the language used and determine its meaning from that language. While this instruction is fairly subject to criticism, the giving of it under the facts of this case does not constitute reversible error, because the evidence does not preponderate in favor of the coal company and the jury must have understood the simple and true issues between the parties. These were sufficiently presented in this and the other instructions, and the conflicts in the testimony were fairly submitted. Snipes had testified that he had made no such sale, entered into no such contract, made no offer and given no such option; and that he had merely told Christian, the agent for the coal company, that he would wire him from the coal fields the next day whether or not he could offer or sell him the second lot of coal; whereas, we think a fair construction of Christian's testimony is that he, Snipes, had made him an offer of fifty carloads of coal for May delivery at an agreed price, but that it was not to be binding upon either until accepted on the next day by the sending of billing orders. It was this conflict in the evidence, these differences between the witnesses as to the facts, which the court intended to submit to the jury. While it should have been submitted in more appropriate language, there is no reason to suppose that the jury were misled by it.

We find no substantial error in the record. The coal company, the vendee, relies upon a telephone conversation to establish the contract, and it is clear that this conversation related to two separate sales of coal; so that it is not a subject of wonder that there was a misunderstanding. Such a misunderstanding is consistent with perfect honesty on the part of both of the wit-

nesses. We therefore hold that the case merely presents a question of fact which has been fairly submitted to a jury, and that they have rendered a verdict which is supported by the evidence offered for Snipes.

*Affirmed.*