## Staunton.

# Virginia Iron, Coal and Coke Company v. A. L. P. Corder, Administrator of J. C. Perkey, Deceased.

### September 17, 1925.

1. Amendments—*Time of Amendment—After Introduction of Testimony—Case at Bar.*—On April 4, 1923, plaintiff filed his original declaration. In July, 1923, before the case was called for trial, plaintiff, over the objection of defendant, was permitted to file an amended declaration. At the trial and after the introduction of testimony, plaintiff, over the objection of defendant, was permitted to file a second amended declaration. Again, during the trial, plaintiff was permitted to file, over the objection of defendant, a third amended declaration. Defendant did not seek a continuance, and it was not claimed that a new cause of action was introduced. It did not appear that defendant was injured in the least by the action of the trial court. The manifest object of the amendments was to conform the pleadings to the proof.

   *Held:* That this being true, there was no merit in an assignment of error to the action of the court in allowing the amendments.

2. Amendments—*General Rule—Discretion of Court.*—In granting leave to amend a pleading, the matter rests in the sound discretion of the court, and where the defendants have no reasonable ground to object to the proposed amendments, an appellate court will not reverse the trial court for allowing pleadings to be amended, unless it appears that the discretion resting in the trial court has been abused.

3. Negligence—*Mine—Invitee—Electricity—Case at Bar.*—In the instant case, an action for death by wrongful act, it was conceded that deceased was not an employee, and the question at issue was whether defendant had violated any duty which he owed to the deceased as an invitee in its mine, and if so, then whether the death of plaintiff's intestate was a natural and probable consequence of the violation of such duty. Deceased was invited to go into a part of the mine in

which he had never been before. He was not warned of the dangers or instructed in any way as to how he should enter the mine, and the only electric wire that he was required to look out for was a trolley wire attached to the roof of the mine. Deceased was killed by contact with a rib wire, about thirteen hundred feet away from the point where his attention was called to the trolley wire. This wire was strung along the rib of the entry four feet from the ground. It was discolored and not readily to be observed. Deceased in coming out of the mine slipped and fell against this wire, which broke, and one end wrapping around deceased killed him. The wire could have been insulated or guarded so as to protect men from coming in contact with it. It was not customary for other mines in the neighborhood to operate a wire strung along its entry. At the point where deceased was killed the walkway was wet and muddy and practically impassable, and persons traversing the entry were forced to walk in between the rails, or on the rails, and deceased slipped in this mud and water and fell against the wire. The jury found a verdict for plaintiff.

*Held:* That the evidence, both as to the condition of the walkway and as to the proper stringing of the wire, was sufficiently substantial to submit the issue of ordinary care to the jury, and their verdict for the plaintiff could not be disturbed as contrary to the evidence or without evidence to support it.

4. NEGLIGENCE—*Invitee—Duty of Owner of Property—Owner not an Insurer.*—The owner is not an insurer of the safety of an invitee while on the premises; he only owes him the duty to exercise ordinary care to see that the property is in a reasonably safe condition for the use he was invited to make of it.

5. NEGLIGENCE—*Invitee—Burden of Proof on Plaintiff.*—In an action against a property owner by an invitee, the burden is upon the plaintiff to show by a preponderance of the evidence that the defendant failed in the performance of the duty to exercise ordinary care towards the invitee.

6. NEGLIGENCE—*Ordinary Care—Questions of Law and Fact.*—What constitutes ordinary diligence or care in a given case is always a question of fact to be determined by the jury in view of surrounding circumstances, when there is substantial evidence upon which to submit such an issue; but in the absence of such evidence, it becomes a question of law to be determined by the court.

7. NEGLIGENCE—*When Question for Court.*—The question of negligence, or due care, is one peculiarly within the province of the jury, and cannot be established as a matter of law by a state of facts about which reasonably fair-minded men may differ.

8. NEGLIGENCE—*Mine—Electricity—Case at Bar.*—In an action against a mine owner for the death of an invitee in its mine by contact with an electric wire, after hearing numerous witnesses, both expert and

experienced, on the question of the proper way to place the voltage wire in the mine, the jury decided the conflict in favor of the plaintiff.

*Held:* That, under the evidence adduced, this conclusion could not be disturbed.

9. NEGLIGENCE—*Contributory Negligence—Burden of Proof.*—The burden of proving contributory negligence rests upon the defendant, unless such contributory negligence is disclosed by the evidence of the plaintiff, or can be fairly inferred from the circumstances.

10. NEGLIGENCE—*Mine—Electricity—Contributory Negligence—Case at Bar.* —In the instant case, an action against a mine owner for the death of an invitee by coming in contact with an electric wire, it was contended by defendant that deceased was guilty of contributory negligence. Deceased was never in this particular mine prior to the day of the accident. The wire with which deceased came in contact was discolored and not easily distinguishable in the darkness of the mine. It did not appear that deceased knew of the existence of the wire or of its dangerous possibility. While it was assumed that the fall of deceased by which he came in contact with the wire was occasioned by his trying to walk the rail of the track instead of walking on the ties, there was no evidence to this effect.

*Held:* That there was no merit in the claim of contributory negligence.

11. NEGLIGENCE—*Mine—Electricity—Assumption of Risk—Case at Bar.*— In the instant case, an action against a mine owner for the death of an invitee by coming in contact with an electric wire, it was contended by defendant that deceased assumed the risk attendant upon his visit into the mine. The evidence did not disclose that deceased knew of the risk from, or the presence of, the electric wire with which he came in contact.

*Held:* That the deceased could not assume a risk of which he knew nothing.

12. NEGLIGENCE—*Mine—Electricity—Assumption of Risk—Case at Bar.*— In an action against a mine owner for wrongful death, deceased was a mere invitee of the defendant on his premises.

*Held:* That the inference could not be drawn as a matter of law that the deceased was cognizant of all the dangers incident to his visit to the mine.

13. PRESUMPTIONS AND BURDEN OF PROOF—*Inference from Presumption.*— An inference cannot be drawn from a presumption, but must be founded upon some fact legally established.

14. APPEAL AND ERROR—*Harmless Error—Irrelevant Evidence.*—The admission of irrelevant evidence will not warrant a new trial where it is not prejudicial to the party seeking a new trial.

15. APPEAL AND ERROR—*Error in Instructions—Where no Substantial Right is Denied.*—It is almost impossible, under the stress and strain of a jury trial, always to observe nice legal distinctions, so that it

is not difficult thereafter to point out mistakes in instructions. Appellate courts, however, should disregard such errors, unless some substantial right has been denied to those objecting thereto.

16. APPEAL AND ERROR—*Error in Instructions—Where no Substantial Right is Denied.*—Where the judgment is for, and the merits of the case are with, the plaintiff, and the jury could not have been misled to the prejudice of the defendant by the instructions given, for the reason that any error contained therein is harmless, there is no reason for a detailed discussion of the instructions by the Supreme Court of Appeals.

Error to a judgment of the Circuit Court of Wise county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Lewis A. Nuckols, D. D. Hull, Jr.,* and *E. M. Fulton,* for the plaintiff in error.

*O. M. Vicars* and *Morton & Parker,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This writ of error brings under review a judgment in favor of defendant in error, plaintiff in the court below, against plaintiff in error, defendant below, in an action of trespass on the case.

The plaintiff in error, hereinafter called defendant, was the owner of a coal mine in Wise county known as the Linden mine. For several months prior to the alleged cause of action, coal operations in this mine had been suspended. Preparatory to putting the mine in condition to resume mining operations, employees were sent into the mine to clean up and remove any

fallen material, to replace the timbers supporting the roof, and to repair, if needed, the track, electric wires and other equipment in the mine.

At the time of the occurrence complained of, the main entry and an entry leading from same known as "nine left entry," had been cleaned up and were ready for operations. This "nine left entry" was approximately forty-three hundred feet in length from its mouth, or point where it turned off from the main entry, to its end or "heading," as it was called. For a distance of thirteen hundred feet from the point where this entry turned off from the main entry, a system of electric motor haulage was used and over the remaining distance the haulage was performed by mules.

The trolley wire, through which operating current was supplied to the electric motors, was suspended from the roof of the mine in hangers. This trolley wire extended from the main entry up into nine left entry as far as the upper end of the switch, and from this point mules were used for hauling purposes.

During the period when coal was being mined in the working places which were reached by means of this entry, machines known as "cutting machines" were used in the mining of coal. These machines were moved from place to place, and on account of their great weight are placed upon trucks, the wheels of which run along the rails of the mine tracks and are propelled by electric current. For this purpose the defendant used an uninsulated copper wire, which also supplied electric current to operate these cutting machines.

The defendant also had an electric pump in nine left entry, located approximately twelve hundred feet beyond the trolley wire. This pump was used for

pumping seepage water from the mine, and the electric current operating the same was carried through this same uninsulated wire. At the time of the occurrence complained of and immediately prior thereto, the cutting machine was not in operation, but the pump was being operated day and night and was operating at the moment of the occurrence. The wire supplying current for the pump extended a distance of three thousand feet along the rib, or side, of the entry and carried an electric current of five hundred and fifty volts. This wire was strung along the right hand side of the entry going into the mine, at approximately nine inches from the rib coal and approximately four feet from the ground. The track in the entry was not laid in the middle of the entry, but was laid nearer to the right hand side going into the mine, in order to afford space for a walkway for employees in going in and out of the mine.

The height of the mine was about sixty-one inches above the track rail, while the width was approximately nine feet at the point where the plaintiff's intestate was killed.

On the day of the accident, the deceased, Peter Bolinski, C. A. Gardner and others were taken into nine left entry by the mine foreman of defendant, and were each assigned rooms in which they were to work. They were given necessary employment slips by the foreman, and were told to take them to the superintendent of the mines for his approval of their employment. Deceased, Bolinski and Gardner started out of the mine to carry their slips to the superintendent. Of these three men, only deceased and Bolinski had miners' lamps, and in going out of the mine they walked along the track "tandem" or in line—Bolinski in front with his lamp, Gardner in the middle without a lamp, and deceased in the rear with a lamp. When

they arrived at a point along the track where, according to the testimony of Bolinski, there was a water hole, which necessitated one either to get his feet wet or walk the track rail, deceased, who was lame in his right leg, slipped and fell into the uninsulated wire strung along the rib of the mine, and was electrocuted.

[1, 2] On April 4, 1923, plaintiff filed his original declaration. In July, 1923, before the case was called for trial, plaintiff, over the objection of defendant, was permitted to file an amended declaration. At the trial and after the introduction of testimony, plaintiff, over the objection of defendant, was permitted to file a second amended declaration. Again, during the trial, plaintiff was permitted to file, over the objection of defendant, a third amended declaration.

The action of the trial court in permitting plaintiff to file his amended declarations constitutes the first assignment of error.

In "furtherance of justice," the General Assembly, at its session of 1914, passed an act which has been carried into the Code as section 6104, which provides:

"In any suit, action, motion or other proceeding hereafter instituted, the court may at any time, in furtherance of justice, and upon such terms as it may deem just, permit any pleading to be amended, or material supplemental matter be set forth in amended or supplemental pleadings. The court shall, at every stage of the proceedings, disregard any error or defect which does not affect the substantial rights of the parties. If substantial amendment is made in pursuance of this section, the court shall make such orders as to continuance and costs as shall seem fair and just."

In passing upon this statute, this court has given it a most liberal construction, to the end that "substantial and speedy justice" might be obtained in its most inexpensive form.

In *Watson* v. *Brunner*, 128 Va. 607, 105 S. E. 99, Judge Saunders said: "The rule is well recognized that in granting leave to amend a pleading, the matter rests in the sound discretion of the court, and where the defendants have no reasonable ground to object to the proposed amendments, an appellate court will not reverse the trial court for allowing pleadings to be amended, unless it appears that the discretion resting in the trial court has been abused."

In the instant case, the defendant, while objecting to the amendments, did not seek a continuance of the case by reason thereof. It is not claimed that a new cause of action was introduced. The gist of the objection is "that the circumstances of this case, the length of time intervening between the death of Perkey and filing of the suit, the fact that none of plaintiff's witnesses were in the employ of defendant and presumptively easy of access for consultation by plaintiff or his attorneys, renders it an abuse of such judicial discretion, * * * ."

The manifest object of the amendments was to conform the pleadings to the proof. It does not appear that defendant was injured in the least by the action of the trial court. This being true the assignment is without merit.

[3] The second assignment of error to be dealt with is the refusal of the trial court to set aside the verdict of the jury because same was contrary to the law and the evidence. It being virtually conceded that the deceased was not an employee, this motion presents clearly the question whether the defendant has violated any duty which it owed to the deceased as an invitee in its mine, and if so, then whether the death of plaintiff's intestate was a natural and probable consequence of its violation of such duty.

Viewed as on a demurrer to the evidence, this brings us to a consideration of the evidence of the plaintiff and all reasonable inferences to be drawn therefrom. This evidence is summarized in the brief, fairly, as we think, from a careful examination of the record. It is as follows:

"The undisputed facts of the case are that deceased, together with others, was invited to go into a part of the mine in which he had never been before (though there is some evidence that the deceased had worked at Inman, one of the plants of the defendant, over five years prior to the date of the accident, but there is no evidence that the conditions of the mine in which he then worked were the same as those in the mine in which the accident occurred); that deceased was taken into said mine without being warned of any dangers thereof or instructed in any way as to how he should enter said mine in safety to himself, other than at the trap door, thirteen hundred feet away from the point where the rib wire started, he, together with his companions, were cautioned to look out for wires; that at that point there was no rib and the only wire he was required to look out for was the trolley wire attached to the roof of said mine; that his attention was never at any time called to the rib wire attached to the rib of said entry, thirteen hundred feet away from the point where his attention was called to the trolley wire; that in the entry in which Perkey was an invitee, the defendant had strung along the rib a copper wire, uninsulated and unprotected, carrying an electric current of five hundred and fifty volts; that for a person to come in contact with such a wire meant almost certain death; that said current was kept on said wires at all times, for the purpose of running and operating a cutting machine and an electric pump; that cutting

machines had not been used on said wire for approximately twelve months prior to the date of the accident, and that said wire had become discolored and instead of having a copperish hue, was dark and could not readily be observed; that the employees and invitees of the defendant were required to pass through this entry, where such wire was hanging, going into and out of the mine; that said wire was strung along the rib of the entry, four feet from the ground and nine inches from the rib; and that deceased, an invitee of the defendant, while walking along this entry, in going out of the mine, slipped and fell against this wire which broke or burned in two, one end wrapping around deceased, and that deceased was thereby killed; that before deceased could be extricated from the wire, it had to be broken or knocked loose from its connection with the trolley wire, some seven hundred feet distant.

"The further facts, as shown by plaintiff's evidence, but disputed in whole or in part by the witnesses of defendant, are, that the wire so hung along said entry on the rib thereof, charged at all times with 550 volts of electricity, was extremely dangerous to the lives of men traversing said entry; that said wire could have been insulated so as to have provided some protection to men coming in contact with it, or it could have been guarded by a board and have been made absolutely safe for men using said entry without interfering with the convenient use of the wire for the purposes for which it was installed, and that it was practicable to so guard said wire; that it was not customary for other mines in Wise county and Southwest Virginia to operate a wire strung along its entry, where men and beasts were required to pass, for the purpose of running both a cutting machine and a pump where the wire

was to be continuously charged with electricity, and that where said wire was so used for the purposes of running a cutting machine, the current was cut off during the day, when men were required to use the entry as a passageway; that it was possible, but inconvenient, to use insulated wire to operate a cutting machine for the distance required in this mine; that in other mines in Wise county and Southwest Virginia it was customary to run the wire used for carrying electricity to operate pumps through the air courses or along entries not used as a passway for men to travel and in other instances to use an insulated wire; that about one week or ten days prior to the fatal accident, this wire had broken or burned in two at the place of the accident and had been joined back together by John Cornett, who did this by twisting the ends together, and that so far as the evidence discloses this break had never been repaired at the time of the accident; that at the time of the accident, at the place where the accident occurred, a great deal of water, mud and gob had been allowed to accumulate, submerging the ties and making the track slippery and hard to walk on; that this water, mud and gob had been allowed to accumulate on account of a drain having been allowed to stop up; the walkway side of the entry, that is, the side opposite the side on which the wire was strung, had been filled up with water, mud and gob to such an extent that it was practically impassable at the point of accident, and persons traversing said entry were forced to walk in between the rails, or on the rails, in passing the point of accident; that deceased slipped in this mud, water and gob and fell against the wire, which broke. While we cannot give in detail the evidence of every witness for the plaintiff, we think the record will disclose that the foregoing is a fair state-

ment of the facts deducible from the evidence of the witnesses introduced by the plaintiff, and the reasonable inferences that can be drawn therefrom, and is corroborated in part by testimony of witnesses for defendant above referred to."

As stated, at the time of the accident, the relation of master and servant had not been entered into.

The duty which the defendant owed the deceased was that duty which the owner of property owes to one who is upon the property by invitation.

[4] The owner is not an insurer of the safety of an invitee while on the premises; he only owes him the duty to exercise ordinary care to see that the property is in a reasonably safe condition for the use he was invited to make of it.

[5] The burden was upon the plaintiff to show by a preponderance of the evidence that the defendant had failed in the performance of this duty.

The contention of the plaintiff is that he has successfully borne this burden by showing that the walkway provided by the defendant for his intestate was not a suitable way and by reason of the condition of the same at the time and place of the accident the deceased slipped and fell; that, due to the negligent manner in which the uninsulated wire carrying five hundred and fifty volts of electricity was strung to the rib of the mine, the deceased came in contact with the wire and was electrocuted.

That the evidence, both as to the condition of the walkway and as to the proper stringing of the wire, was sufficiently substantial to submit the issue of ordinary care to the jury cannot be gainsaid.

[6] "What constitutes ordinary diligence or care in a given case is always a question of fact to be determined by the jury in view of surrounding circum-

stances, when there is substantial evidence upon which to submit such an issue; but in the absence of such evidence, it becomes a question of law to be determined by the court." *Va. I. C. & C. Co.* v. *Kiser*, 105 Va. 704, 54 S. E. 892.

[7] In *Richmond & P. Ry. Co.* v. *Rubin*, 102 Va. 814, 47 S. E. 836, Judge Buchanan said: "The question of negligence, or due care, is one peculiarly within the province of the jury, and cannot be established as a matter of law by a state of facts about which reasonably fair-minded men may differ."

[8] After hearing numerous witnesses, both expert and experienced, on the question of the proper way to place the voltage wire in the mine, the jury decided the conflict in favor of the plaintiff. This conclusion, under the evidence adduced, we are unwilling to disturb.

[9] It is contended, however, that the deceased was guilty of contributory negligence. The burden of proving contributory negligence rests upon the defendant, unless such contributory negligence is disclosed by the evidence of the plaintiff, or can be fairly inferred from the circumstances.

The evidence of Bolinski is that the deceased was not warned as to the location or danger of the wire. On page 85 of the record we find this question disposed of as follows:

"Q. Mr. Bolinski, was there any information about wires given by the foreman or assistant foreman to you or Mr. Perkey other than as to that trolley wire which was from five to six hundred feet from where Perkey was killed?"

"A. No, sir."

[10] It also appears in evidence that deceased was never in this particular mine prior to the day of the

accident; that the voltage wire, instead of being a bright copper color, was, by reason of its long unused stay in the mine, of a dark color not easily distinguishable in the darkness of the mine. It nowhere affirmatively appears that deceased knew of the existence of the wire or of its dangerous possibility.

It does appear (p. 122 record) in evidence that deceased, though an experienced miner, had never worked in a mine where the wire was strung along the rib of the entry. In the testimony of Bolinski we find:

"Q. Had you ever noticed any uninsulated wire strung along the rib of an entry which was being used for a travelway for men or being used for mule haulage before?"

"A. No, sir.

"Q. In the mines where you and Perkey had worked had you ever heard of such a thing?

"A. No, sir."

While it is assumed that the fall of the deceased was occasioned by his trying to walk the rail of the track instead of walking on the ties, there is no evidence to this effect. Both Bolinski and Gardner were in front of deceased and neither could state positively what caused deceased to fall. Gardner says he heard him stump his toe. It is hardly probable that deceased stumped his toe while walking on a smooth track rail.

We do not think there is any merit in the claim of contributory negligence.

[11, 13] Another contention of the defendant is that the deceased assumed the risk attendant upon his visit into the mine. There is no merit in this contention, for the reasons pointed out, that the evidence does not disclose that deceased knew of the risk he is supposed to have assumed. While the deceased is properly designated as an invitee, he is, as a matter of

-fact, treated as an employee and upon him it is sought to place a higher degree of care and conduct as an employee than the law by presumption places upon him as an invitee. As a mere invitee of the defendant on its premises, the inference could not be drawn as a matter of law that the deceased was cognizant of all the dangers incident to his visit to the mine. "An inference cannot be drawn from a presumption, but must be founded upon some fact legally established." *C. & O. Ry. Co. v. Heath,* 103 Va. 64, 48 S. E. 508.

[14] Another assignment of error relates to the action of the court in admitting alleged illegal evidence for the plaintiff over the objection of the defendant. Without undertaking to discuss this assignment in all of its bearings, we are of the opinion that the evidence admitted over the objection of the defendant, while in some instances irrelevant, is not amenable to the criticism that it so prejudiced the jury as that its admission warrants the granting of a new trial on this account.

The last assignment of error is that the court erred in giving to the jury on the motion of the plaintiff the following instructions:

"1. The court instructs the jury that in this case the defendant, Virginia Iron, Coal and Coke Company, owed to J. C. Perkey, the deceased, the duty of prevision and preparation, and to exercise ordinary care to see that the entry or passageway through which Perkey was invited to travel in going in and out of said mine was in a reasonably safe condition for the use of said Perkey in the manner and to the extent that he was invited to use said entry or passageway.

"The court further instructs the jury that if they believe from the evidence in this case that the defendant, Virginia Iron, Coal and Coke Company, did not

use ordinary care to keep and maintain the entry to its mine in reasonably safe condition and did not use ordinary care to install, maintain and operate the electric wires therein in a reasonably safe manner, and that said entry and wires were not kept, maintained and operated in a reasonably safe manner, and that on account of said unsafe condition of said entry and the unsafe manner in which said electric wires were installed, maintained and operated, if they believe from the evidence they were so installed, maintained and operated, the deceased, J. C. Perkey, while in said entry as the invitee of the defendant, without any negligence on his part, came into contact with said electric wires and was thereby killed, then they must find for the plaintiff.

"The court instructs the jury that if you believe from the evidence, that the defendant negligently constructed and maintained electric wires in its entry, and negligently failed to safeguard said wires, and that said wires carried a dangerous current of electricity, and that the deceased upon invitation of defendant in the use of the passageway or entry was likely to come in contact with said wires, and you further believe from the evidence that said defendant, by the exercise of ordinary care and caution, could have rendered said wires so carrying such dangerous current of electricity reasonably safe by insulation, or by protecting said wires, if they could not be insulated, or by hanging or installing said wires in a different position in said entry than that used, or in entries or ways not ordinarily used as passways by employees or invitees, so that its employees or invitees would not, in the discharge of their duty, come in contact with same, and that it, in the manner alleged in the amended declaration, failed to do so, then such failure was negligence.

"The court instructs the jury that the burden of proving a custom or general usage is upon the party alleging it.

"The court instructs the jury that negligence is the doing of something that a person of ordinary care and prudence would not do, or the failure to do something that a man of ordinary care and prudence would do under the circumstances of the case; and that, in this case, it was the duty of the defendant, Virginia Iron, Coal and Coke Company, to use ordinary care to make the entry to its mine into which the deceased, J. C. Perkey, was invited, reasonably safe, and to use ordinary care to install and operate the electric wires used therein in a reasonably safe manner; and that since electricity in law is considered a highly dangerous agency, ordinary care as applied to the installation, use and operation of electric wires demands a higher degree of foresight and diligence than is required in affairs involving less hazard, and must be graduated and measured by the danger.

"The court instructs the jury that negligence as used in these instructions is want of ordinary care. And the care which is ordinary care varies according to the circumstances. The care which under certain conditions is sufficient to be ordinary care, under other conditions may not be sufficient. Greater caution is demanded on the part of the defendant or on the part of deceased according as the circumstances demanded greater caution. Each is bound to use only ordinary care, but each is bound to use such ordinary care, and ordinary care is that care which a man of ordinary prudence would use under all circumstances proved in the case, and in this case it was the duty of the defendant to provide for the deceased a reasonably safe approach or way for the purpose of enabling him to de-

part in reasonable safety from the place assigned him, and to use ordinary care in the installation and operation of its electric wires or current upon said wires; and that since electricity in law is considered a highly dangerous agency, ordinary care, as applied to the installation and operation of electric wires or current upon said wires, demands a higher degree of care and foresight than is required in affairs involving less hazard, and must be graduated and measured by the danger; and if the jury believe from the evidence in this case that the defendant company failed to exercise ordinary and reasonable care in the performance of any one or all of them, and such failure was the proximate cause of the death of deceased, then the jury will find for the plaintiff.

"The jury are further instructed by the court that if the defendant relies upon the contributory negligence of the deceased to defeat the plaintiff's action, the burden of proving such contributory negligence rests on the defendant, unless such contributory negligence is disclosed by the plaintiff's evidence, or can be fairly inferred from the circumstances, and it will not avail the defendant, unless it has been established by a preponderance of the evidence.

"The jury are instructed that if they find damages for the plaintiff, in ascertaining such damages, they should find the same with reference:

"1. To the pecuniary loss sustained by Geneva Perkey, widow of J. C. Perkey, deceased, and the three children of J. C. Perkey, deceased, by the death of said J. C. Perkey, fixing the same at such sum as would be equal to the probable earnings of the said J. C. Perkey, taking into consideration the age, business capacity, habits, health, energy and perseverance of the deceased during what would probably have been his lifetime if he had not been killed.

"2. In ascertaining the probability of life the jury have the right to determine the same with reference to recognized scientific tables relating to the expectation of human life.

"3. By adding thereto compensation for the loss of his care, attention and society to his wife and children.

"4. By adding such further sum as they may deem fair and just by way of solace and comfort to said wife and children for the sorrow, suffering and mental anguish occasioned to them by his death."

[15] In *Old Dominion Coal Corporation* v. *Snipes*, 142 Va. 331, 128 S. E. 521, Prentis, P., delivering the opinion of the court, said: "It is almost impossible, under the stress and strain of a jury trial, always to observe nice legal distinctions, so that it is not difficult thereafter to point out mistakes in instructions. Appellate courts, however, should disregard such errors, unless some substantial right has been denied to those objecting thereto."

[16] Inasmuch, therefore, as we have come to the conclusion that the case, on its merits, is with the plaintiff, and that the jury could not have been misled to the prejudice of the defendant by the instructions given, for the reason that any error contained therein is harmless, we see no reason for a detailed discussion of these instructions.

Upon the whole case, we find no error in the judgment under review, and it must be affirmed.

*Affirmed.*