## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

RICHMOND & MANCHESTER RAILWAY CO. *v.* MOORE'S ADM'R.

April 1, 1897.

Absent: KEITH, P.

1. PERSONAL INJURY—*Unsafe premises—Invitation to public—Independent contractor.*—A street railway company which advertises a balloon ascension at a park owned by it thereby invites the public to visit its premises and witness the ascension, and is liable in damages for an injury to a visitor resulting from negligently permitting the falling of a pole used in preparing for said ascension. It is immaterial whether the person making the ascent is an independent contractor or not, or whether the visitor went to the park on the street cars or by some other mode of conveyance. The gist of the action is the negligent failure of the defendant to use proper care to protect the visitor from a danger on its premises while there at defendant's invitation. One who invites another expressly or by implication to come upon his premises must use ordinary care and prudence to render the premises reasonably safe for the visit.

Error to a judgment of the Circuit Court of Chesterfield county, rendered December 8, 1894, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

This was an action of trespass on the case to recover damages for personal injuries inflicted on the plaintiff's intestate by the alleged wrongful act of the defendant. The defendant owned and operated a street railway running from the city of Richmond through the city of Manchester to a certain park in Chesterfield county called Forest Hill Park, and in order to increase its business and to induce the public generally to travel on its line they contracted with one Peter

Blum, a professional balloonist, to give three balloon ascensions, and the time and place of the ascensions were extensively advertised, and the public invited to attend. A contract had been made with Blum to make nine ascensions, three at the end of each of three street railway lines. Three had been successfully made at the terminus of one line, and two of the three contracted for at Forest Hill Park had likewise been successfully made. The third was to take place on the afternoon of July 15, 1893. The defendant company owned the park, but no admission was charged to the balloon ascension. It expected to make its profit from the increased travel on its line of railway. Quite a large crowd was present on the afternoon of the accident, many of whom travelled on the defendant company's cars, some probably by private conveyance, and others on foot. It is probable that the plaintiff's intestate walked to the park. Blum was the owner of the balloon and had entire charge and control of making the ascension, and of all of the preparations necessary therefor. In order to effect the ascension two poles about forty feet long were placed in an upright position, about fifty feet apart, and securely fastened by guy ropes. A rope was stretched between the tops of these poles, and to this the balloon was fastened, and when the balloon was sufficiently inflated the guy ropes were loosened and the poles permitted to fall to the ground. When all was in readiness for the poles to be thrown to the ground and for the balloon to ascend, warning of the intention to drop the poles was given by Blum and his attendant by crying, "Look out!" One of these poles in falling struck the plaintiff's intestate on the head, from the effects of which he died the following night. The evidence is conflicting as to whether the plaintiff's intestate was standing in a dangerous position at the time the warning was given, or ran to that position after the poles were in the act of falling. The other evidence sufficiently appears in the opinion of the court.

The jury found for the plaintiff and assessed his damages at $2,500.   A motion was made to set aside the verdict and award a new trial, but the motion was overruled and judgment entered on the verdict in favor of the plaintiff.   To that judgment this writ of error was awarded.

After the declaration in the case was filed, but before any appearance by the defendant, the plaintiff filed an amended declaration.   The defendant demurred to both the original and amended declarations and to each count thereof, which demurrer was sustained as to the original declaration, and overruled as to the amended declaration.   The amended declaration is in the words and figures following:

"In Chesterfield Circuit Court:

"Abner L. Moore, personal representative of George E. Moore, deceased, plaintiff, complains of the Richmond and Manchester Railway Company, a corporation duly chartered and organized under the laws of the State of Virginia, defendant, of a plea of trespass on the case for this—to-wit: That before and at the time of committing the grievances hereinafter complained of, the said defendant maintained, managed, and controlled, and was the owner and proprietor of a certain park, called 'Forest Hill Park,' in the county of Chesterfield, about—to-wit: Two miles from the city of Manchester, which was kept open for and accessible to the public; and the said defendant owned, maintained, operated, and ran a line of electric street railway cars from the city of Richmond across James river, through the city of Manchester, and to its said park, at which was the terminus of its said line.   And said defendant regularly ran its cars and carried passengers to and from its said park, and in order to induce greater travel on its said railway, so that its said park and railway might be rendered the more profitable to it, the said defendant did, from time to time, have and advertise special attractions and amusements at its said park, so as to induce the public to use its said railway and visit its said park for its profit and advantage, the said defendant thus gaining largely by the increased travel over its railway, while charging no fare for admission to its said park; and said defendant did, for some time before the 15th day of July, 1893, advertise and publicly make known that on that said day a balloon ascension would take place at its said park, and did thereby invite and induce the public generally, including plaintiff's intestate, to visit its said park and witness said balloon ascension; that said defendant did make arrangements for said balloon ascension, and did employ and pay one Peter Blum to have a balloon ascension made on the said 15th day of July, 1893, upon the said park and pre-

mises of the defendant, for the benefit, profit, and advantage of said defendant as aforesaid ; that in connection with said balloon ascension were used many large and dangerous appliances—to-wit : Ropes, stakes, fire, gas, and poles, which rendered the said park and premises of the defendant dangerous, especially for children who should accept the said invitation and inducement of defendant during said balloon ascension.

"And thereupon it became and was the duty of the defendant to use all due and proper care and precaution to protect all persons accepting its said invitation, especially children, who the defendant knew, or ought to have known, were likely to be attracted to its said park and premises by its said invitation and inducement, and whose natural instinct and childish impulses would make them especially eager to view said balloon ascension, as defendant knew, or ought to have known, from danger and injury, by erecting barriers or guards at a safe distance from said balloon and dangerous appliances, or otherwise exercising proper care and diligence for the protection of all persons on its premises and park as aforesaid, upon its said inducement, especially of plaintiff's intestate.

"And the plaintiff avers that the said balloon ascension did, on the said 15th day of July, 1893, take place on the said park and premises of the said defendant as aforesaid, and yet the defendant, notwithstanding its said duty and [in] utter disregard thereof, altogether failed and neglected to take due and proper care and precaution for the safety of persons coming upon its premises and visiting its said park, upon its said invitation and inducement to view said balloon ascension, and entirely neglected to erect barriers or guards at a safe distance from said balloon and dangerous appliances, and otherwise to exercise proper care and diligence—to-wit: On the said 15th day of July, 1893.

"And the said plaintiff further avers that his intestate, George E. Moore, then of the age of eight years and six months, on the said 15th day of July, 1893, visited and was present on the said park and premises of the defendant, on the defendant's said invitation and inducement, in company with many other children and persons, to view said balloon ascension, and as said balloon ascension was being had, a certain heavy and dangerous pole or stake, being one of the appliances used in connection therewith, was thrown and fell, and by reason of the gross carelessness, neglect, and default of said defendant in failing to use proper care and caution for the protection of persons on its premises, especially children, at its said inducement as aforesaid, from danger and injury, by erecting barriers or guards around or near the place where said balloon ascension was being had, or otherwise using due care and taking proper precaution for their safety, the said pole or stake, in being thrown or in falling, struck the said George E. Moore, without fault on his part, by means whereof he was knocked down, crushed and killed. Whereupon by means of the premises and in virtue of the statute for such cases made and provided, plaintiff says that he has cause of

action against the said defendant, and has suffered damage to the amount of $10,000.

"And for this also, to-wit: That before and at the time of committing the grievances hereinafter complained of the said defendant maintained, con_trolled, and managed and was the owner and proprietor of a certain park called 'Forest Hill Park,' in the county of Chesterfield about, to-wit: Two miles from the city of Manchester, which was kept and allowed to remain open to the public, and the said defendant owned, maintained, operated, and ran a line of electric street railway and cars from the city of Richmond, across James river, through the city of Manchester and to its said park, at which was the terminus of that end of its said line. And said defendant regularly ran its cars and carried passengers to and from its said park, and in order to induce greater travel on its said railway so that its said park and railway might be rendered the more profitable to it, the said defendant did from time to time have and make known special attractions and amusements at its said park so as to induce the public to use its said railway and visit its said park for its profit and advantage, the said defendant thus gaining largely by the increased travel over its railway, while charging no fee for admission to its said park, and allowing all persons to enter and remain in the same whether they had or might patronize its said railway or not. And said defendant did, to-wit: For several days prior to the 15th day of July, 1893, advertise and publicly make known that on said day a balloon ascension would take place at its said park, and did thereby invite and induce the public generally, including complainant's intestate, to visit its said park, and witness said balloon ascension; that said defendant did make arrangements for said balloon ascension and did employ and pay one Peter Blum to make or have a balloon ascension made on the said 15th day of July, 1893, upon the said park and premises of the defendant for the benefit, profit, and advantage of said defendant as aforesaid: That in connection with said balloon ascension were used many large and dangerous appliances, to-wit: Ropes, stakes, fire, gas, and poles, which rendered the said park and premises of the defendant dangerous, especially for children, who should be attracted by and accept such invitation or inducement during said balloon ascension. And thereupon it became and was the duty of the defendant to use all due and proper care and precaution to protect all persons accepting its said invitation and attracted by its said inducement, especially children, who the defendant knew, or ought to have known, were likely to be attracted to its said park and premises by its said balloon ascension, so publicly made known as aforesaid, and whose natural instincts and childish impulses would make them eager to closely view said balloon ascension, as defendant knew, or ought to have known, from danger and injury by erecting barriers or guards at a safe distance from said balloon and dangerous appliances or otherwise exercising proper care and diligence for the protection of all persons on its premises and park as aforesaid, upon its said inducement, especially of plaintiff's intestate, whether or not said persons and children so acting upon

its said inducement or accepting its said invitation as aforesaid, came to its said park by its said railway and cars or on foot or otherwise. And the said plaintiff avers that the said balloon ascension did, on the said 15th day of July, 1893, take place on the said park and premises of the said defendant as aforesaid, and yet the said defendant, notwithstanding its said duty, and in utter disregard thereof, altogether failed and neglected to take due and proper care and precaution for the safety of persons, especially children, attracted to and visiting its said park upon its said invitation and inducement to view said balloon ascension, and entirely neglected to erect barriers or guards at a safe distance from said balloon and dangerous appliances, or otherwise to exercise proper care and diligence in respect thereof, to-wit: On the said 15th day of July, 1893. And the plaintiff further avers that his intestate, George E. Moore, then of the age of eight years and six months on the said 15th day of July, 1893, resided in Chesterfield county, beyond the city of Manchester, near to and about, to-wit: One mile from defendant's said park, and on said day, by reason of defendant's said invitation and inducement, was attracted to, and in company with many others, went to defendant's said park to view said balloon ascension, and while watching, viewing, and observing the same in such manner as might have been reasonably expected from a child of his age, as said balloon ascension was being had, a certain dangerous and heavy pole or stake being one of the appliances used in connection therewith, which said pole or stake was owned by and furnished by the defendant, was thrown and fell, and by reason of gross carelessness, neglect, and default of the defendant in failing to use proper care and caution for the safety and protection of persons on its premises, especially children, attracted thereon as aforesaid, while viewing said balloon ascension, from danger and injury by erecting barriers or guards around or near the place when said balloon ascension was being had, or otherwise using due care and taking proper precaution for their safety, the said pole or stake, in being thrown or in falling, struck the said George E. Moore, without fault on his part, by means whereof he was knocked down, crushed, and killed.

"Wherefore, by reason of the premises and in virtue of the statute for such cases made and provided, the plaintiff says that he has cause of action against the said defendant, and has suffered damage to the amount of $10,000. And therefore he brings his suit."

After all the evidence had been introduced, the defendant moved the court to give certain instructions to the jury. But the court refused to give some of the instructions asked for, modified others, and instructed the jury as follows:

## Instruction No. 1.

The jury are instructed—

"1. That if they believe from the evidence that the defend-ant company employed and caused Peter Blum to make the balloon ascension mentioned in the evidence, on its premises for its benefit, and extended an invitation, express or implied, to the public generally, to attend the same, and that the appliances connected with said balloon ascension were of such a nature as to render its said premises dangerous to those who might assemble there to view said balloon ascension, then the legal obligation rested on the defendant company to take reasonable precaution to prevent injury to all persons who might come upon its premises, in consequence of such invitation, to view said balloon ascension. And if the jury shall believe from the evidence that the plaintiff's intestate came upon the defendant's premises to view said balloon acension, in pursuance of said invitation, and while viewing said balloon ascension in such manner and with such care as might have been reasonably expected from a child of his age, under the circumstances, was so injured as to cause his death, in consequence of the neglect of the defendant to exercise such proper care as was reasonably necessary for his protection from danger incident to said balloon ascension on its premises, then they should find for the plaintiff."

## Instruction No. 2.

"If the jury should find for the plaintiff, in ascertaining his damages they may consider the loss of the services of the deceased to his father until he would have become twenty-one years of age; compensation for the loss of his care, attention, and society to his father. And they may add such further sum as they deem fair and just by way of solace and comfort to his father for the sorrow, suffering, and mental anguish

occasioned to him by his death.    But the entire damages must not exceed $10,000.''

### Instruction No. 3.

''That if, looking to the age of plaintiff's intestate and the circumstances in which he was, he exercised such care as might have been reasonably expected from a child of his age, under the circumstances, and was killed in consequence of the neglect of the defendant, then the defendant is liable, although the child may have contributed to the injury.''

### Instruction No. 4.

''That even though the jury should believe from the evidence that there was lack of care on the part of the parents of the plaintiff's intestate, or either of them, in permitting him to go and view said balloon ascension unattended, such lack of care cannot affect plaintiff's right to recover in this case.''

### Instruction No. 5.

''The court instructs the jury that the law does not require a man, in the performance of a lawful act on his land, to use more than ordinary care in respect to other persons thereon, although such persons may have been invited or induced by the owner of said land to enter thereon to observe and enjoy attractions on said land.

'If the jury believe from the evidence that the defendant company invited persons to Forest Hill Park to see a balloon ascension, on the 15th day of July, 1893, and that the defendant company, in making said balloon ascension, did use such reasonable care as an ordinarily prudent man would have used under similar circumstances, for the protection of such persons as might assemble there to see said balloon as-

cension, in pursuance of said invitation, then the jury must find for the defendant company.

"Ordinary care is such care as an ordinarily prudent person would exercise under similar circumstances."

### Instruction No. 6.

"The court instructs the jury that the law does not require a man on his own premises, in the performance of an act in itself free from hazard or danger, to use extraordinary foresight, care, and prudence in the performance of such act, but such care, prudence, and foresight need only be commensurate with the hazard and danger incident to the act. If the jury shall believe from the evidence that the use of poles in said balloon ascension was not extraordinarily dangerous or hazardous, and that the defendant company, in throwing down said poles, used ordinary care and prudence to prevent injury to the persons there assembled—children as well as adults—then the jury must find for the defendant company."

### Instruction No. 7.

"The court instructs the jury that if they believe from the evidence that the boy, whose death is the subject of this suit, came upon the premises of the defendant on the 15th day of July, 1893, without an invitation, either express or implied, from said defendant company, then the said George E. Moore, the plaintiff's intestate, was a mere licensee, and the said defendant company was liable to him, if injured upon their premises, for wanton injuries only, and they must find for the defendant company, unless they further believe the said boy was wantonly injured whilst on the premises of the defendant."

### Instruction No. 8.

"The court instructs the jury that the mere fact that a person is under twenty-one years of age, does not thereby en-

tirely excuse or relieve him from responsibility for injuries that may be occasioned by his own negligence, and that while children between the ages of seven and fourteen years are generally presumed to be less capable of exercising the care and prudence of adults, yet the jury must determine, under all of the circumstances of the case, such as his age, intelligence, and opportunity of notice and warning, whether the plaintiff's intestate exercised that degree of care or prudence which a boy of his age and intelligence would ordinarily have shown under the same existing circumstances. And if the jury believe from the evidence that the plaintiff's intestate was of sufficient age and intelligence to exercise ordinary care and prudence in case of danger, and that he was notified and warned of impending danger in this instance, and that after being so warned and notified, he failed to exercise such ordinary care and prudence as a boy of his age and intelligence ought to have exercised, and that by his own carelessness and negligence, or recklessness unnecessarily exposed himself to danger, or placed himself in a position whereby he was struck and killed, then they must find for the defendant company."

*Instruction No. 9.*

"The court instructs the jury that the burden of proving negligence is on the plaintiff in this case, and the jury must be satisfied that the defendant was guilty of negligence before they can find for the plaintiff. But the jury may find for the plaintiff if they believe from a preponderance of the whole evidence in the case, that the negligence of the defendant company has been established and that no contributory negligence of the plaintiff has been proved."

To which ruling and opinion of the court in refusing to give some of the said instructions, in modifying others, and in giving the last-mentioned instructions, as aforesaid, the defendant, by its counsel, excepted and tendered its bill of ex-

ceptions, and prayed that the same might be signed, sealed, and made part of the record, and the same was done accordingly.

*Wyndham R. Meredith* and *Meade Haskins*, for the plaintiff in error.

*B. T. Crump* and *J. M. Gregory*, for the defendant in error.

HARRISON, J., delivered the opinion of the court.

The defendant in the court below, was a street railway company, running its cars from the city of Richmond through the city of Manchester, and about two miles beyond it, to a place known as "Forest Hill Park." This park was owned by the defendant, was under its control and management, was kept open to the public, and was made attractive in various ways to induce people to make it a pleasure resort and thereby gain patronage for the street railway. The defendant employed and paid one Peter Blum to go upon its park premises on the 11th, 13th, and 15th days of July, 1893, and make three balloon ascensions. The defendant advertised these performances in the newspapers, by handbills, and otherwise, and in this manner extended to the public an invitation to visit its premises and witness the balloon ascensions. This invitation drew a large crowd to the defendant's premises on the evening of July 15, 1893, including many children, and among them the plaintiff's intestate, a little boy eight years and six months old. In arranging for the balloon ascension, two poles, each about forty feet long, were placed in an upright position, fifty feet apart, and secured by guy ropes attached to stakes driven in the ground. A rope was run from the top of one pole to the top of the other, and the balloon was swung to this rope until inflated and ready to ascend, when the guy ropes were released and the poles were thrown down. The evidence shows that the crowd generally knew

nothing of the danger they would be in from the falling of the poles, and supposed the poles were fixed and stationary; that the grown people as well as the children had crowded around the poles watching the inflation and other preparations for the ascension. As the balloon was about ready to go up, Blum made some effort to clear a way for the first pole to fall, and a signal was given to *"look out."* The people took this to mean that the balloon was about to go up, and it created great excitement, stirring about, and running for better points of view. At this juncture the pole was released and fell, striking the plaintiff's intestate on the head and killing him.

The principles of law upon which the right of recovery rests in a case like this are well settled. Mr. Cooley, in his work on Torts (2d ed.), p. 718, says: "It has been stated on a preceding page that one is under no obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he expressly or by implication invites others to come upon his premises, whether for business or any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit."

In the more recent work of Buswell on Personal Injuries, the law is well stated in section 66, as follows: "If a person enters upon the premises on business to be transacted with the owner or occupant thereof, or by the procurement of the owner or occupant; and, being himself in the exercise of due care, is injured by reason of the unsafe condition of the premises or the approaches thereto, such unsafe condition being known, or such as ought to have been known, to the owner or occupant, the latter will be answerable in damages for such injuries." And in section 70, he says: "It is apprehended that the responsibility of the owner or occupant of land or buildings is the same towards persons entering his

premises, whether these come upon business to be transacted with the owner or occupant, or at his solicitation, or upon his mere invitation, since, in any of these cases, the entry is by his procurement or inducement, and not by his mere acquiescence or against his will.'' These principles are supported by numerous adjudications. *Nichols Adm'r* v. *W. O. & W. R. R. Co.*, 83 Va. 99; *Davis* v. *Central Congregational Society*, 129 Mass. 367; *Curtis* v. *Kiley*, 153 Mass. 123; *Powers* v. *Harlow*, 53 Mich. 507.

The first assignment of error is to the action of the court in overruling the demurrer to the amended declaration. This was not error. The declaration states a good cause of action under the authorities cited. It contains every requisite allegation in such a case, and the facts which constitute the cause of action are so fully set forth that they can be easily understood by the defendant, by the jury in ascertaining the truth of the allegations, and by the court in giving judgment. 1 Chitty's Pl. 256; *Jones* v. *O. D. C. M.*, 82 Va. 148.

The chief ground of objection to the declaration is that it does not allege how the plaintiff's intestate went to the park, whether he walked or rode, how he was there, whether as a passenger over the defendant's railway, as a licensee, or as a trespasser. It is immaterial how the deceased went to the park, whether he walked, went on the street cars, or by some other mode of conveyance. The gravamen of this action is the negligent failure of the defendant to use proper care to protect the deceased from a danger on its premises while he was there at the defendant's invitation. This is the plaintiff's case and the issue the defendant had to meet, and is fully and clearly set forth in the declaration, with all necessary narration of the circumstances.

The second assignment of error is to the action of the court in giving its instructions, and in refusing or modifying certain instructions offered by the defendant. All that was proper to be given in those instructions asked for by the de-

fendant and refused by the court, was fully covered by the nine instructions given by the court, which present every legal proposition arising on the issue to be tried by the jury; and, without approving the entire accuracy of each of the instructions given, it is sufficient to say that the defendant was not prejudiced thereby, all of its rights having been liberally guarded and protected.

One of the instructions asked for by the defendant and refused was the basis of an earnest contention in argument that the balloon ascension was made by Peter Blum as an independent contractor, and that the defendant was therefore not responsible for his negligence. Blum was not exercising an independent employment on the occasion in question, but if he had been, that fact would not have affected the responsibility of the defendant or relieved it from the duty of exercising due care in keeping its premises reasonably safe for those persons it had invited to come upon them. Buswell on Personal Injuries, sec. 66.

In the case of *Curtis* v. *Kiley*, 153 Mass. 123, the plaintiff sued the defendant land owner for injuries received by falling into a trench in the yard. The land owner made defence on the ground that the trench and yard were in the control of an independent contractor, who was laying drain pipes therein for the defendant. The court, however, ruled against this defence, holding in its opinion as follows: We think that the case falls within the rule that when the owner of premises which are under his control employs an independent contractor to do work upon them, which, from its nature, is likely to render the premises dangerous to persons who may come upon them by the invitation of the owner, the owner is not relieved by reason of the contract, from the obligation of seeing that due care is used to protect such persons. The owner cannot continue to hold out the invitation without being bound to exercise due care in keeping the premises reasonably safe for use according to the invitation.''

The refusal of the court to set aside the verdict as contrary to the law and the evidence constitutes the defendant's third assignment of error.    The verdict of the jury is fully sustained by the evidence, and there being no error to the prejudice of the defendant in the instructions given, this motion was properly overruled.

For these reasons the judgment of the Circuit Court must be affirmed.

*Affirmed.*

Rehearing applied for and refused.