# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

RAYLASS CHAIN STORES, INC. v. GLADYS A. DEJARNETTE.

January 17, 1935.

Present, All the Justices.

The opinion states the case.

*Wilson, Kemp & Hobbs* and *McKinney & Settle*, for the plaintiff in error.

*Martin & Tuck*, for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This is an action by notice of motion in which the plaintiff, Gladys A. DeJarnette, recovered a judgment against Raylass Chain Stores, Incorporated, in the sum of $4,000. The case was tried by a jury upon an issue involving the alleged negligence of the defendant and the contributory negligence of the plaintiff. The case made by the plaintiff may be thus summarized:

On the morning of February 8, 1933, between the hours of 11 and 12 o'clock, the plaintiff, a young married woman, went to the store of defendant situated in the town of South Boston, Virginia, to purchase a piece of oilcloth. The defendant's store, locally known as the Outlet Store, is approximately twenty-four feet wide and ninety feet long. On the left hand side in the extreme rear of the store is a stairway leading from the main floor to the basement, the basement being used merely for storage purposes and not for the display of merchandise. The walls of the store were on two sides of the stairway, to-wit, the rear and left hand side. There was a landing leading to the stairway which was about three feet long and two and one-half feet wide and six inches below the main floor. The length of the open space leading from the main floor to the landing is thirty-six inches. This open space had no barrier across it. At the time of the accident there were electric lights

burning in the store but the light at the head of the stairway was not burning. Across the front of the stairway, with the exception of the thirty-six inch open space, there were racks or fixtures eighty-three inches high. Shoes were on display on these racks and shoe boxes were stacked under the racks to such an extent that the stairway was completely hidden from the view of one approaching from the front of the store. It was proved by the plaintiff that the color of the main floor and that of the landing was the same, both being of a dark color. There were in the store various other racks of a corresponding type to the fixtures which plaintiff claims concealed the stairway, on which merchandise was displayed.

When plaintiff arrived at the store on the morning of the accident she was approached by Miss Ruth Henderson, a clerk, who enquired of her what she desired, and to whom she stated that she wished to purchase some oilcloth. What occurred after her arrival at the store is given in the language of the plaintiff: "I went into the Outlet Store the morning of February 8th, to purchase some oilcloth, and when I entered the store, Miss Henderson was at the front counter at the door, and she said, 'Is there anything for you?' And I said: 'Yes, I want some oilcloth to match the things in the kitchen'; and she said, 'All right, right here in the back, Mrs. DeJarnette.' She was in front and I was in the back. I followed her and she took me to the oilcloth and she said: 'You be selecting your oilcloth while I get the scissors.' I stood there, not knowing there was a danger place there, and then she came and asked me to step back while she cut the oilcloth, and I stepped back and fell down the steps."

Plaintiff further stated that she had never been in the vicinity of the stairway and was not aware of its existence. It clearly appears that she suffered severe injuries and no complaint is made as to the amount of the damages awarded.

At the conclusion of the evidence, the jury, in the presence of the court and counsel, was accorded a view of the premises and made a personal examination of the same.

■ That the status of plaintiff while in the act of making a purchase was that of an invitee must be conceded.

The general principle as to the duty owed an invitee is thus stated in R. C. L., vol. 26, p. 66: "A merchant or shopkeeper who maintains warerooms for exhibition and sale of goods impliedly solicits patronage, and one who accepts the invitation to enter is not a trespasser, nor a mere licensee, but is rightfully on the premises by invitation, and entitled to all of the rights of invited persons. The floors and passageways of the building must be kept in a reasonably safe condition; and the same is true of stairways, elevator doors, windows and other places and appliances."

The same authority on page 55 says: "The authorities are entirely agreed upon the proposition that an owner or occupant of lands or building, who directly, or by implication, invites or induces others to go thereon or therein, owe to such person a duty to have the premises in a reasonably safe condition, and to give warning of latent or concealed defects."

■ This court, in accord with the general rule, has held that when the owner or occupant of lands or buildings either expressly or impliedly invites others to come upon his premises, whether for business or any other purpose, it is the duty of the owner or occupant to be reasonably sure that he is not inviting them into danger, and therefore it is incumbent upon him to exercise ordinary care and prudence to render the premises reasonably safe for the visit. See *Richmond and Manchester Railway Co.* v. *Moore's Adm'r*, 94 Va. 504, 27 S. E. 70, 37 L. R. A. 258.

In *Eastern Shore of Virginia Agricultural Association* v. *Le Cato*, 151 Va. 614, 144 S. E. 713, 714, the relative rights and duties of an invitee were under consideration and the Special Court of Appeals in an opinion delivered by Judge Crump, announced the same principle of law.

■ The contention of defendant that the plaintiff has failed to show any negligence upon the part of defendant and that therefore the trial court erred in refusing to

strike out the plaintiff's evidence, is not well founded. If the statement of plaintiff is true (and the jury has said it is true, in the face of a most positive denial by defendant's witness, Miss Henderson), she had a right to accompany defendant's employee to the rear of the store and if the stairway was concealed, as the jury found by their verdict, then it was the duty of the employee to warn plaintiff of her danger before requesting plaintiff to step aside in order for her to cut the oilcloth.

It was purely a jury question as to whether or not the placing of the merchandise upon the racks, as shown by the evidence, constituted negligence. Certainly it cannot be stated as a matter of law that fair-minded men might not differ upon the question of negligence. That being true, the following doctrine announced in *Virginia, etc., Coke Co.* v. *Perkey's Adm'r*, 143 Va. 168, 130 S. E. 403, 406, applies: "The question of negligence or due care is one peculiarly within the province of the jury and cannot be established as a matter of law by a state of facts, about which reasonably fair-minded men may differ."

In our opinion the primary negligence of the defendant having been determined by the jury and approved by the trial court, this question then arises: Was the plaintiff guilty of such contributory negligence as bars her recovery?

The evidence offered by the defendant is in conflict with plaintiff's evidence on every material point. The contention of defendant that plaintiff was guilty of contributory negligence is based in a great measure on the alleged admission of plaintiff "that she did not look to see where she was going when she stepped backward or sideways from the main floor level to the landing."

What we have said with reference to primary negligence applies to this contention.

In the case of *Lehman* v. *Amsterdam Coffee Co.*, 146 Wisconsin 213, 131 N. W. 362, 364, the court dealt with a case practically "on all fours" with the case at bar. The facts of that case were as follows:

Defendant's store is about eighty feet long and faces

west. The rear half of the store is used for storing coffee, tea, etc., and not for reception of customers. In this case, however, customers were expressly or impliedly invited there. In the extreme southeast corner is an open stairway in the floor, entered from the east, and surrounded on the north and west by a railing somewhat less than three feet high, and on the south by the wall of the store upon which were shelves. Around the railings on the north and west were bags of coffee three to four and one-half feet high. The stairway was two and one-half feet wide, lighted by an arc light twelve feet from the floor near the middle of the store about thirty feet east of the stairway. Plaintiff entered at dark to buy a lamp chimney. Miss Orth, clerk, either expressly or impliedly invited her to the shelf at the stairway to get a lamp chimney. Plaintiff turned around and fell down the stairs.

Judge Winslow, in rendering the opinion of the court, says: "We should be slow to say that an ordinary open stairway or hatchway in the storage part of a store could be called a trap or snare even to an invitee. It is common knowledge that such places are very usual, and doubtless every person of full age should anticipate their existence; but the circumstances here are very much out of the ordinary. The stairway was surrounded on two sides with piles of merchandise as high or higher than the rail, and on one side by shelving. The evidence seems to be ample to show that in approaching it from the front of the store there would be no sign or indication of a stairway, and that only as one came practically to the opening itself from the east was it possible to see it, or anything suggesting the existence of an opening in the floor. The jury might, we think, well say from the evidence that it was a trap or snare, of whose existence under the circumstances the rule of ordinary care would require that an invited person be warned.

"Defendant contends as a matter of law that the plaintiff was guilty of negligence in not seeing the stairway. It is true there was enough light in the store to see the opening if the attention of the person were directed to it, but when,

as the evidence tends to show, the plaintiff was invited to the very verge of the opening for the purpose of examining goods on the shelf, and was left there while her mind was so occupied with this purpose, with all the outward indications of the stairway concealed, we do not feel that the court can say as a matter of law that it was negligence not to see it."

It is a matter of common knowledge that in this period of keen competition merchants put forth every effort to display their wares and merchandise in the most attractive manner, and the main point in the scheme is to attract the attention of the shopper. To ask a prospective purchaser to keep one eye on the display of merchandise and the other eye on the floor to discover a stairway concealed by said merchandise is asking too much. The argument of defendant that the plaintiff, had she looked for the stairway, could have seen it, and that if she failed to look and was injured she is guilty of contributory negligence, is similar to the argument of the defendant in the *Le Cato Case, supra.* There it was contended, as it is here, that plaintiff's injury was the result of his failure to observe an alleged patent defect in a seat arranged for the sightseers at a county fair. The court's reply to that argument is as follows:

"Such an argument is based upon a mistaken theory of the law. The plaintiff had paid an entrance fee and was entitled to assume that the means of access to a seat and of egress or descent from it were not accompanied by any danger. He could not be required, without any knowledge or warning of danger, to be on the lookout for it. It was not negligence on the part of the plaintiff to fail to be on the lookout for a possible omission of the defendant to comply with its duty. *Hospital of St. Vincent* v. *Thompson,* 116 Va. 101, 81 S. E. 13, 51 L. R. A. (N. S.) 1025; *Virginia, etc., Co.* v. *Perkey,* 143 Va. 168, 130 S. E. 403. The duty to protect an invitee is necessarily co-extensive with the invitation."

In the case at bar the plaintiff visited the defendant's

store for the purpose of purchasing merchandise and she had a right to rely on the legal discharge by the defendant of the duty it owed her as an invitee.

In our opinion there is no merit in this contention.

It is further assigned as error that the court erred in giving and refusing instructions. A careful examination of the instructions given and refused convinces us that the assignment is without merit. The instructions cover every phase of the controversy and in our opinion presented the case fairly to the jury from the standpoint of both plaintiff and defendant.

The last assignment of error is that the court erred in permitting the plaintiff to introduce evidence that Miss Henderson stated after the accident that she had been expecting someone to fall down the steps.

Upon her examination in chief Miss Henderson, in contradiction of the plaintiff, had testified that the plaintiff was thoroughly familiar with the premises and had been in close proximity to the stairway on several occasions; that the statement of plaintiff that she (Miss Henderson) had requested her to step back or aside was untrue; that the stairway was open and obvious. In other words, it could be said that defendant relied in great part upon the evidence of Miss Henderson to establish the contributory negligence of plaintiff.

Upon cross-examination she was asked if she had not made the statement to plaintiff's husband one hour after the accident that she had been expecting some one to fall down the stairway. She denied having made such a statement. Thereupon, plaintiff was recalled and without objection testified that Miss Henderson had made such a statement. When the husband was interrogated in regard to the statement, objection was made, but the court permitted him to testify that the statement had been made to him an hour after the accident.

As we comprehend the situation no effort was made to introduce the statement as a part of the *res gestae* or as

binding upon the defendant. It was simply an effort to introduce evidence affecting the credibility of the witness.

In *Norfolk & P. Traction Co.* v. *O'Neill,* 109 Va. 672, 64 S. E. 948, 949, a similar question arose. Judge Buchanan in disposing of the question said: "Neither did the court err in permitting Dr. Woodward and Mr. Miller to testify as to a statement made by the motorman after the accident in reference to the circumstances attending it. That evidence was admitted as affecting the credibility of the motorman's testimony, and not as an admission binding his company, and the jury were so informed by the court."

Our conclusion is that the case has been fairly submitted to the jury upon the merits, and the judgment of the lower court should be affirmed.

*Affirmed.*