# Richmond

## LOUISE KNIGHT, AN INFANT, ETC. v. RUTH FRIEND MOORE, ET AL.

January 19, 1942.

Record No. 2432.

Present, All the Justices.

142

The opinion states the case.

*M. J. Fulton* and *J. M. Turner*, for the plaintiff in error.

*George B. White* and *Haskins Hobson*, for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

The plaintiff in error, Louise Knight, an infant sixteen years of age, suing by her next friend, filed a notice of motion for judgment against the defendants in error, Ruth Friend Moore and R. D. Moore, to recover damages arising out of personal injuries claimed by her to have been received due to the negligence of the defendants while she was on their premises as an invitee. In a jury trial there was a verdict and judgment for the defendants which are here for review on a writ of error granted to the plaintiff below.

For convenience the parties will be referred to as the plaintiff and the defendants according to the positions occupied by them, respectively, in the lower court.

Since the principal contention is that the questions of the

alleged negligence of the defendants, and the contributory negligence of the plaintiff, were not fairly submitted to the jury in proper instructions, it will be necessary to state somewhat in detail the evidence submitted on behalf of the respective parties.

The defendants for a number of years have maintained and operated during the summer months, in Chesterfield county, Virginia, a lake for swimming and other aquatic sports. In and around the lake are a diving tower, springboards, slides, chutes and amusement devices such as are usually found at places of this character. This case involves the proper installation and operation of one of these popular devices.

Near the southwestern corner of the lake is located a tower which extends about twenty feet above the surface of the water. On this tower is a platform which is reached by a ladder leading perpendicularly down into the water. Two parallel wire cables, about four feet apart, extend from the top of the tower in an oblique angle eastwardly across the surface of the lake toward the eastern bank. There they are anchored so that they hang about twenty-four to thirty-six inches above the surface of the water at the edge of the lake. The tower and cables are anchored to the opposite or western shore of the lake by guy wires.

At the southeastern corner of the lake, a little to the north of the tower first described, is a similar tower with cables leading across the lake and anchored in the western bank. Patrons of the lake who desire to use these appliances climb from the water to the platform and by means of a trolley attached to the two cables coast down the incline of the slanting cables until they either disengage their hold and jump into the water or until their descent is brought to a stop by their striking the water near the edge of the lake.

At night the lake and the various devices are lighted by a number of floodlights located on high iron poles and focused on the lake.

Admission to the lake and the use of the various amusement devices are afforded upon the payment of a small entrance fee.

On the night of July 27, 1938, the plaintiff, with several friends, went to the lake, paid the required admission, and obtained the privilege of using the lake and the various devices furnished there. After coasting down the cables on the southeastern tower toward the western bank, the plaintiff emerged from the water and walked in an easterly direction along a sand beach which extends along the southern edge of the lake. Upon reaching the eastern end of the beach, which terminates at the foot of a grassy slope, she stepped down about eighteen inches into the edge of the water, and while proceeding in a northerly direction along the eastern shore of the lake, tripped over one of the cables which ran from the tower located in the southwestern corner of the lake and was anchored in the eastern bank, as has been described. When she tripped over the first cable she fell forward and struck the companion cable and was injured. So far the facts are undisputed. From here the evidence is highly conflicting and these issues were developed:

The plaintiff claims that at the time she tripped over the cable she was walking along what appeared to her to be a narrow walkway or beach bordering on the edge of the water, apparently designed and intended for the use of the patrons of the lake.

On the other hand, the defendants claim that the plaintiff was proceeding along what they term a "scum gutter," which was obviously not intended as a walkway. They say that the plaintiff should have used the walkway which was located some five feet above the edge of the water and beyond the ends of the cables.

The plaintiff claims, and in this she is supported by several witnesses, that the ends of the cables which she struck were dark and discolored and were not easily discernible; that the area where the ends of the cables were anchored in the bank was unlighted; that the cables themselves were unguarded; and that there was nothing in the situation to warn her and the other patrons of the lake that she was in a dangerous area or one not intended for the use of the patrons.

The defendants' witnesses say that the area where the cables

were anchored was brilliantly illuminated by surrounding floodlights, that the ends of the cables which the plaintiff struck were recently painted with aluminum paint, and that therefore, the situation was perfectly obvious and patent to the plaintiff had she been looking where she was going. They say at the time she struck the cable she was running or "trotting" with her head turned to the left and with her attention fixed on bathers in the lake.

The plaintiff, however, denies that she was running or "trotting," and on the contrary says that she was walking "like anyone would ordinarily walk down the street," that she was looking where she was going, and that her attention was not momentarily diverted, as claimed by the other side.

The defendants further claim, and it does not seem to be disputed, that at the base of each tower, near the surface of the water, there is a painted sign which reads, "Danger—Cable Area." This sign, however, is located some distance from the point where the cables are anchored in the bank, and some distance from the edge of the lake along which the plaintiff was proceeding at the time of her injury.

The gravamen of the plaintiff's case is that the defendants were negligent in permitting the cables to extend across the walkway along the water's edge, in failing to provide and maintain sufficient light to disclose the cables, and in failing to provide at the place where the cables crossed the beach, any signs or danger signals warning the patrons of the situation.

The principles governing the liability of the owner of premises to an invitee, and which are applicable here, have been often stated by this court. They may be summarized as follows:

■ ■ (1) The owner of premises is not an insurer of his invitee's safety thereon. *Turner* v. *Carneal,* 156 Va. 889, 894, 159 S. E. 72. He must use ordinary care to render the premises reasonably safe for the invitee's visit. *Richmond & M. Ry. Co.* v. *Moore's Adm'r,* 94 Va. 493, 504, 27 S. E. 70, 37 L. R. A. 258; *Williamson* v. *Wellman,* 156 Va. 417, 424, 158

S. E. 777; *Raylass Chain Stores* v. *DeJarnette*, 163 Va. 938, 943, 178 S. E. 34, 35.

(2) While the owner must give notice or warning of an unsafe condition which is known to him and is unknown to the invitee, such notice is not required where the dangerous condition is open and obvious, and is patent to a reasonable person exercising ordinary care for his own safety. *Eastern Shore of Virginia Agricultural Ass'n* v. *LeCato*, 151 Va. 614, 619, 620, 144 S. E. 713.

(3) The duty which a property owner owes to an invitee is co-extensive with and limited by the invitation. In other words, the duty of exercising ordinary care to render the premises reasonably safe for the visit does not extend to places beyond the invitation and to which the invitee is not reasonably expected to go. *Eastern Shore of Virginia Agricultural Ass'n* v. *LeCato*, *supra* (151 Va., at page 619).

(4) An invitee has the right to assume that the premises are reasonably safe for his visit. In the absence of knowledge or warning of danger, he is not required to be on the lookout for it. *Eastern Shore of Virginia Agricultural Ass'n* v. *LeCato*, *supra* (151 Va., at page 618); *Raylass Chain Stores* v. *DeJarnette*, *supra* (163 Va., at page 946, 178 S. E., at page 37).

Unless the evidence is without conflict, or unless fair-minded men cannot differ on the inferences to be drawn from it, the questions as to whether the owner of the premises has exercised the required care toward his invitee, and whether the latter has been guilty of contributory negligence, are matters for the jury.

And so in the case before us, in view of the conflict in the evidence, we cannot say as a matter of law either that the defendants were free from negligence or that the plaintiff herself was guilty of contributory negligence. We think it was a question for the jury as to whether the location of the cables across the edge of the lake created a dangerous situation at a place where patrons of the lake were invited or had the right to go, or whether the area surrounding the cable anchorage was sufficiently lighted to give the patrons of the lake

sufficient notice of the situation, or whether this area was sufficiently guarded.

It was likewise a question for the jury as to whether the plaintiff knew of the situation, or whether it was so open and obvious and patent to her that in the exercise of ordinary care she should have observed it.

The defendants in error do not challenge these principles. Their position is that the case was fairly submitted to the jury on proper instructions, and that, therefore, the verdict is conclusive.

On its own motion the court gave Instruction 1B which reads as follows:

"The court instructs the jury that if they believe from a preponderance of the evidence in this case that the location, construction and maintenance of the cables over which Louise Knight fell, under all of the circumstances shown in this case, created a dangerous condition, at a place where the patrons were invited or had a right to go, then it was the duty of the Moores, in some reasonably effective way to warn the patrons including Louise Knight of such condition or to exclude them from its location, *unless Louise Knight* knew, or *in the exercise of reasonable care on her part for her own safety, should have known or discovered such condition.*" (Italics supplied.)

The plaintiff in error contends that this instruction is erroneous in that the italicized words deprived her of the right to assume that the premises were reasonably safe, and placed upon her the burden of being on the lookout for a dangerous situation even though it was unknown to her and even though she had not been warned of it, contrary to the principles laid down in *Eastern Shore of Virginia Agricultural Ass'n* v. *LeCato, supra,* and *Raylass Chain Stores* v. *DeJarnette, supra.*

In our opinion this objection is well taken. Of course, if the plaintiff had known of the situation, or if it was open and obvious and patent to her, a warning would have been useless and unnecessary. Or, to state the matter in another way, it places no undue burden on an invitee to say that he "must

see or observe" that which is open or obvious or patent to him. But the language used in the instruction goes beyond this, for it places upon the invitee the duty to exercise "reasonable care" to "discover" a situation although it may be hidden or latent. The word "discover" is not synonymous with the words "see" or "observe." Those things which are patent or obvious to us we readily and ordinarily "observe." By the exercise of extraordinary diligence we "discover"— that is, uncover or bring to light—things which may be hidden or latent.

As we have said, whether the situation was known to the plaintiff, or whether it was so open and obvious as to require no warning, were questions for the jury.

Instead of that used, the instruction should have closed with this or similar language: "unless Louise Knight knew of the situation, or unless it was so open and obvious that it should have been seen or observed by a person in the exercise of ordinary care for his own safety." *Eastern Shore of Virginia Agricultural Ass'n v. LeCato, supra* (151 Va., at pages 619, 620).

[ The instruction, as given, was in conflict with Instruction I, given at the request of the defendants, which correctly told the jury that if they believed from the evidence "that the cables over which the plaintiff fell were open and obvious and should have been observed by a person in the exercise of reasonable care and prudence, then it was not the duty of the defendants to give any sort of warning" of such situation.

What we have said likewise applies to the court's modification of Instruction 5 over the objection of the plaintiff.

We find no reversible error in the granting or the refusal of other instructions.

It is further assigned as error that the lower court permitted the defendants to show, over the objection of the plaintiff, that over a period of nine years during which the lake had been in operation, and during which more than half a million people had patronized it, no other person had been

injured by coming in contact with the cable over which the plaintiff tripped.

A sufficient answer to this assignment is found in the fact that the plaintiff's counsel opened the door for the admission of this testimony by proving that on a prior occasion another patron of the lake had fallen over the same cable where the plaintiff was injured, although there was no proof that the defendants had had any knowledge of this accident.

The plaintiff having undertaken to prove by reason of a similar accident on a former occasion that the condition was unsafe, she is in no position to complain because the defendants undertook to rebut this by showing that although the premises had been patronized by a great number of people over a long period, no other accident had occurred at the place where the plaintiff was hurt, and that hence the situation there was reasonably safe.

However, inasmuch as the case must be remanded for a new trial, attention should be called to the case of *City of Radford* v. *Calhoun*, 165 Va. 24, 181 S. E. 345, 100 A. L. R. 1378, where we dealt with a similar situation. We there pointed out (165 Va., at page 36, 181 S. E., at page 350) that such evidence is inadmissible since it tends to confuse the minds of the jury with collateral issues.

For the same reason the evidence offered by the plaintiff that another patron was injured at the same place is inadmissible in the absence of a showing that the defendants knew of such occurrence. Of course, if the defendants had known of the former accident, such evidence would have been admissible for the purpose of bringing home to them knowledge of the dangerous situation.

For the errors committed by the court with respect to Instruction 1B and Instruction 5, as has been pointed out, the judgment complained of is reversed and the case is remanded for a new trial.

*Reversed and remanded.*